UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAHA VISCONTI,

    *Plaintiff*,

v.

GAVIN NEWSOM, *et al.*,

    *Defendants*.

Civil Action No. 23-3147 (RDM)

## MEMORANDUM OPINION

Plaintiff Maha Visconti, proceeding *pro se*, brings this action against California Governor Gavin Newsom; Bankruptcy Judge Sherri Bluebond; California State Judges Patricia Guerrero, Jessica Jessner, Judge Sergio Tapia II, and Martha Matthews; Howard Ehrenberg in his role as a Chapter 7 Bankruptcy Trustee; the California Commission on Judicial Performance; the United States of America; and the Federal Bureau of Investigations ("FBI"). Dkt. 1 at 2–3.

This case is similar to Plaintiff's earlier case, *Visconti v. Burghardt*, in which she claimed that she was "unlawfully and illegally incarcerated on 8/22/2023 without due process nor any single evidence of any crime, nor violation by Defendant State Court Judge . . . Burghardt." Civ. No. 23-3145, Dkt. 1 at 6. The Court dismissed that action *sua sponte* on July 23, 2024, for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. *See Visconti v. Burghardt*, Civ. No. 23-3145 (RDM), 2024 WL 3509419 (D.D.C. July 23, 2024). Plaintiff's current action suffers from many of the same deficiencies. Here, she alleges a conspiracy of California and federal officials. According to Plaintiff "named Defendants all know each other and belong to a criminal enterprise who targeted

Plaintiff for years at all angles[,] from massive cover up of Fraud on the Court and subjected Plaintiff for years to unhuman Punishment, Humiliation, and Current FRAUDULENT INCARCERATION." Dkt. 1 at 8.

For the reasons explained below, the Court will **DISMISS** the action.

## I.

Governor Gavin Newsom and the Commission of Judicial Performance appeared in the case and moved to dismiss. Dkt. 27; Dkt. 34. The Court issued a *Fox*/*Neal* order on August 22, 2024, instructing Plaintiff that she should respond to the motion on or before September 20, 2024. Dkt 37. The Court also granted Plaintiff CM/ECF access but instructed her that she "shall not file anything on the docket other than a response to Defendants' Motions to Dismiss until this Court has ruled on that motion." Min. Entry (Aug. 22, 2024). Plaintiff subsequently filed an unopposed motion for an extension of time to file that response, Dkt. 39, and the Court granted that motion, instructing her to respond on or before October 20, 2024. *See* Min. Entry (Sept. 18, 2024). The Court warned, however, that "[i]f plaintiff does not respond by that date, the Court may decide the motions without the benefit of her response, may treat the motions as conceded, or may dismiss the action for failure to prosecute." *Id.*

On October 17, 2024, Plaintiff filed a second unopposed motion for an extension of time to respond to the pending motion to dismiss, this time requesting until November 11, 2024, to file her response. Dkt. 46. In that motion, Plaintiff claimed that she was unable to prepare her response because she had been moved to a different detention facility on October 10, 2024. *Id.* at 2. Just three days later, however, Plaintiff—despite her claimed inability to meet the deadline originally set on August 22 and extended on September 18, and in contravention of the Court's order that she refrain from filing anything on the docket other than

2

her response to the pending motion—filed an Affidavit for Default against Howard Ehrenberg, Dkt. 43, and a military affidavit in support of the same, Dkt. 44.  As that thirteen-page filing demonstrates, Plaintiff was able to prepare detailed legal papers and apparently elected to devote her efforts to matters other than preparing her opposition to the motion to dismiss.

That, moreover, is only part of the story.  Despite Plaintiff's claimed inability to respond to the pending motion to dismiss on or before September 20, 2024—and repeated claims that her conditions of confinement continue to prevent her from responding—she filed an entirely new lawsuit in this Court on September 30, 2023, against Vice President Harris (in her capacity as the former Attorney General of California), the current Attorney General of California, a bankruptcy judge, two district court judges, sixteen jurors, and a host of other individuals.  *See Visconti v. Harris*, Civ. No. 24-2844, Dkt. 1.  But that is not all.  In yet another case Plaintiff filed in this Court against, among others, a federal district court judge, the U.S. District Court for the Central District of California, the United States, and the Internal Revenue Service, she has continued to make various filings, including a notice filed on November 4, 2024, "remind[ing]" the Court that "this pending matter must be addressed timely by the Court."  *Visconti v. Pinto*, Civ. No. 24-2113, Dkt. 14 at 2.

In any event, November 11, 2024, has now come and past, still with no response to the motions to dismiss.  Shortly before that date, Plaintiff filed yet another unopposed motion for an extension of time to respond.  That motion relies on the same October 10 change in her place of incarceration and merely asserts that she "is still tempora[ril]y housed with other new inmates at a reception Desk without any daily program, nor daily access to the phone, nor the ability to prepare for her oppositions in these current conditions by October 20, 2024."  Dkt. 51 at 3.  Then, two days later, Plaintiff filed an "*Ex Parte* Application/Motion . . . for Extension of

Time to File an Opposition to Motion to Dismiss." Dkt. 52.  She continues to rely on the premise that she is being held at a temporary facility.  But she fails to explain how she has managed to initiate and to pursue other cases, and to make an unrelated filing in this case despite a Court order barring her from doing so, when she is unable respond to the long-pending motions to dismiss.

In light of Plaintiff's failure to comply the Court's order to refrain from filing anything other than a response to the pending motions, and Plaintiff's extensive activity in other matters, the Court will **DENY** Plaintiff's third and fourth motions for extensions of time, Dkt. 51 & Dkt. 52, and will consider the pending motions, Dkt. 27 & Dkt. 34, on the merits.  In declining to continue to delay resolution of this case, the Court further notes that, as explained below, Plaintiff's complaint is frivolous on its face and could have been dismissed at the screening stage and that that the Court is plainly without jurisdiction in this matter.  Moreover, because November 11, 2024, has now passed without Plaintiff filing her opposition, the Court will **DENY** Plaintiff's second motion for an extension of time (until November 11, 2024), Dkt. 46, as moot.  The Court, accordingly, turns to the merits.

## II.

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Complaints premised on fantastic or delusional scenarios or supported wholly by allegations lacking "an arguable basis either in law or in fact," however, are subject to dismissal as frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the

4

wholly incredible[.]"); *Best v. Kelly*, 39 F.3d 328, 330–31 (D.C. Cir. 1994) (holding that a court may dismiss claims that are "essentially fictitious"—for example, where they suggest "bizarre conspiracy theories . . . [or] fantastic government manipulations of their will or mind" (citations and internal quotation marks omitted)).  As a result, a court is obligated to dismiss a complaint as frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton*, 504 U.S. at 33, or "postulat[e] events and circumstances of a wholly fanciful kind," *Crisafi v. Holland*, 655 F.2d 1305, 1307–08 (D.C. Cir. 1981).

This is such a case.  Plaintiff, who is currently serving a sentence imposed by a California state court, alleges a vast conspiracy among California courts, the California governor, and the FBI to deprive her of her rights in state court.  She alleges that Defendants "all know each other and belong to a criminal enterprise [that] targeted Plaintiff for years at all angles from massive cover up of fraud on the court and subjected Plaintiffs to unhumain, Humiliation and current fraudulent incarceration." Dkt. 1 at 8.  She further alleges that "Defendants Federal Bankruptcy Judge Sherri Bluebond and Trustee Howard Ehrenberg in cahoots with Criminal John Visconti defrauded [her] of 2 Billion Dollars of her Community Funds and coached others to target [her] for years and formed bogus police reports against Plaintiff for years one after the other in Los Angeles County." *Id.* at 8–9.  On Plaintiff's telling, Defendants also "caused her to lose her son who was kidnapped by them at age 13 to cause destruction" and "caused [her] to be fraudulently incarcerated since [August 22, 2023]." *Id.* at 9.  She asks the Court to order her immediate release from custody in the California penal system and seeks "damages for being defrauded for years." *Id.* at 10.

These allegations are "wholly incredible," *Denton*, 504 U.S. at 33, and, among numerous other deficiencies, fail to establish a plausible basis for the Court to exercise subject-matter

5

jurisdiction over the case. "[A] district court may dismiss a complaint *sua sponte* prior to service on the defendants pursuant to Fed. R. Civ. P. 12(h)(3) when . . . it is evident that the court lacks subject-matter jurisdiction." *Evans v. Suter*, No. 09-5242, 2010 WL 1632902, at *1 (D.C. Cir. Apr. 2, 2010). Here, the Court cannot, for example, identify any non-fanciful federal claim that might support federal question jurisdiction. To the contrary, Plaintiff is, at bottom, challenging state court proceedings. But, under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to review judicial decisions by state . . . courts." *Richardson v. D.C. Ct. of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996). Plaintiff requests "immediate relief that she is released from being fraudulently incarcerated and held hostage in Jail" in addition to "punitive damages" and a return of her "funds" that were diverted by "the scam committed by Prior Chief Judge of Supreme Court Patricia Guerrero." Dkt. 1 at 10. This is just the type of relief that the *Rooker-Feldman* doctrine prohibits.

Finally, Plaintiff's claims against the various judges that she names in her complaint are barred by judicial immunity to the extent that she is suing them for acts taken in their judicial capacity. "[J]udicial immunity is not overcome by allegations of bad faith or malice," rather "the immunity is overcome in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (internal citations omitted). "'[W]hether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.* at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Allegations

that the judge acted in excess of his authority do not suffice to establish that the judge acted in "the complete absence of all jurisdiction." *Id.* at 13.  Here, although it is difficult to discern what Plaintiff contends that each Defendant did, it appears that believes that she was mistreated by the California judicial system, and those claims must be dismissed on grounds of absolute judicial immunity, *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993).

## III.

As explained above, after the Court ordered Plaintiff from refraining from filing anything on the docket but before she filed her response to the pending motions to dismiss, Plaintiff filed an affidavit seeking the entry of a default against one of the Defendants, Howard Ehrenberg, Dkt. 43, and the clerk's office entered a default as a matter of course, Dkt. 45.  Ehrenberg now asserts that he never received proper service of process, and he seeks to set aside the default; he also moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 49.  Because the Court has already concluded that it lacks subject-matter jurisdiction and that, accordingly, the complaint must be dismissed, the Court need not reach the merits of this separate motion.  In addition to dismissing the complaint in its entirety for the reasons explained above, the Court will **GRANT** Ehrenberg's motion and set aside the default because the Court did not have jurisdiction to enter a default in the first place.

Finally, the Court will **GRANT** Governor Newsom's motion requesting that the Court take judicial notice of the docket in *People v. Maha El Pinto Maqaddem*, Civ. No. SA098438 (Los Angeles Superior Court), Dkt. 28; and **GRANT** the California Commission on Judicial Performance's motion requesting "Relief from Responsive Pleading Deadline" for the reasons the Commission provides, Dkt. 36.

7

## CONCLUSION

For all of the foregoing reasons, the Court concludes that Plaintiff has failed to allege facts, if accepted as true, to establish subject-matter jurisdiction or a claim that is not entirely fanciful and that is within the authority of the Court to adjudicate.  The Court will, accordingly, **DISMISS** the complaint in its entirety.

A separate order will issue.

     /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 15, 2024